# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) |
| :--- | :--- |
| | ) |
| v. | ) |
| | ) 1:18-cr-00020-JDL |
| LARRY O'NEAL, | ) |
| Defendant. | ) |

## ORDER ON DEFENDANT'S MOTION FOR LEAVE TO FILE *FRANKS* HEARING MOTION

On April 26, 2019, a jury convicted the Defendant, Larry O'Neal, of one count of possession of child pornography, in violation of 18 U.S.C.A. § 2252A (West 2019). *See* ECF No. 111. On April 29, 2019, O'Neal filed a Motion for Leave to File a *Franks* Hearing Motion (ECF No. 125), in which he seeks leave to file a motion under *Franks v. Delaware*, 438 U.S. 154 (1978), based on information that first came to O'Neal's attention during trial. For the reasons that follow, I deny the motion.

## I. FACTUAL BACKGROUND

On January 3, 2018, Homeland Security Investigations (HSI) Special Agent Edward Ainsworth accessed a law enforcement database that monitors an online peer-to-peer file sharing network and identifies Internet Protocol (IP) addresses that have exchanged known or suspected child pornography files, referred to as files of interest, with other users. Each file has a digital signature, known as a Secure Hash Algorithm Version 1 (SHA-1) value, which is so unique that it can be determined to a near certainty that two files with the same SHA-1 value are identical copies of one another, regardless of the file name. The law enforcement database identifies IP

addresses that have exchanged child pornography files, which are identified by their SHA-1 values, with other users and lists the IP addresses by geographic location. Among the IP addresses listed by the database was an IP address located in Houlton, Maine, which is within Special Agent Ainsworth's area of operations. The data from the law enforcement database indicated that two files of interest had been associated with the Houlton IP address, and that the "last observation" of a file of interest at that IP address had occurred on December 28, 2017, at about 9:30 p.m. ECF No. 125-4 at 1.

Special Agent Ainsworth then obtained an administrative subpoena to be served on Pioneer Broadband to get the subscriber information associated with the Houlton IP address. On January 10, 2018, Pioneer Broadband responded to the subpoena by informing Special Agent Ainsworth that the IP address belonged to Larry O'Neal. Special Agent Ainsworth also requested copies of both of the files of interest from the HSI Cyber Crimes Center, which maintains a library of suspected child pornography files. The Cyber Crimes Center only had one of the two files, a video which was provided to Special Agent Ainsworth on January 12, 2018. Special Agent Ainsworth viewed the video and determined that the video depicted a prepubescent female having sexual intercourse with an adult male.[1]

Based on that information, Special Agent Ainsworth prepared an affidavit in support of a search warrant application for O'Neal's home, vehicles, and person. Because Special Agent Ainsworth had not viewed the second file of interest, he could not attest to its contents and, therefore, he did not include information about the file

---

[1] This file was referred to during O'Neal's trial as the "12yo video" because of its file name.

in the warrant application affidavit. As a result, the affidavit describes only the "12yo video," which Special Agent Ainsworth had obtained and viewed, and reports a "last observation" date of December 28, 2017. A still photo from the video was attached as an exhibit to the warrant application. The search warrant authorizing the search of O'Neal's home, vehicle, and person was issued on January 17, 2018. The search took place on January 18, 2018, and resulted in the seizure of O'Neal's computers and hard drives and, ultimately, his arrest for possessing child pornography.

On the first day of O'Neal's jury trial in April 2019, the Government called Detective Robert Erdely of the Indiana County, Pennsylvania District Attorney's Office as a witness. Detective Erdely serves as an administrator for the law enforcement database that identified O'Neal's IP address as having exchanged suspected child pornography files. Detective Erdely testified that the "12yo video" depicting a prepubescent female having sexual intercourse with an adult male was associated with O'Neal's IP address only on October 3, 2017, and that the second file of interest, which depicts an approximately one-year-old child being held aloft by an adult while defecating, was associated with O'Neal's IP address on December 28, 2017.

After the trial concluded, O'Neal filed the instant motion seeking a *Franks* hearing. O'Neal argues that the search warrant application "contained false and misleading information" because it created the false impression that the "12yo video" was associated with O'Neal's IP address on December 28, 2017. *See* ECF No. 125 at 1-2. Absent that false impression, O'Neal argues, probable cause is lacking.

## II. LEGAL ANALYSIS

"An affidavit submitted in support of a search warrant application is presumed valid[.]" *United States v. Grant*, 218 F.3d 72, 77 (1st Cir. 2000). A defendant is entitled to an evidentiary hearing to challenge the veracity of a search warrant affidavit only when he makes "two substantial preliminary showings." *United States v. McLellan*, 792 F.3d 200, 208 (1st Cir. 2015) (quoting *United States v. Rigaud*, 684 F.3d 169, 173 (1st Cir. 2012)). The defendant must show, first, "that a false statement or omission in the affidavit was made knowingly and intentionally or with reckless disregard for the truth[,]" and second, that the falsehood or omission was "necessary to the finding of probable cause." *Id.* (quoting *Rigaud*, 684 F.3d at 173); *see also Franks*, 438 U.S. at 155-56. A defendant who makes the required preliminary showing and is granted a hearing must then "establish by proof that these standards have been met" in order for a court to void the warrant and suppress any evidence that was discovered during the search. *McLellan*, 792 F.3d at 208.

Here, however, there is an additional threshold issue of timeliness. A request for the suppression of evidence "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits[.]" Fed. R. Crim. P. 12(b)(3)(C). A court may, however, consider an untimely request "if the party shows good cause." Fed. R. Crim. P. 12(c)(3). O'Neal argues that his motion is timely because the basis for the motion, i.e., the fact that the "12yo video" was not identified as being shared from O'Neal's IP address on December 28, 2017, was not reasonably available until Detective Erdely testified at trial. The Government responds that the Government's trial brief, a motion in limine,

and a subsequent search warrant application related to the case, all of which were provided to O'Neal prior to trial, indicated that the "12yo video" was associated with O'Neal's IP address only on October 3, 2017. O'Neal acknowledges that the search warrant application contained this "new information" and that he "did not catch this information in his review prior to trial." ECF No. 125 at 7. Furthermore, although Detective Erdely was the Government's first witness in a trial that lasted for four full days, O'Neal did not raise the *Franks* issue during the trial. Thus, O'Neal's post-trial request for a *Franks* hearing is not timely and he has not demonstrated good cause for his failure to raise the issue sooner. But even if the request is treated as timely, O'Neal has failed to make the required preliminary showing that would entitle him to a *Franks* hearing for the reasons that follow.

First, O'Neal must show that "a false statement or omission in the affidavit was made knowingly and intentionally or with reckless disregard for the truth." *McLellan*, 792 F.3d at 208. "Negligent omissions—even negligent omissions of highly probative information—do not satisfy this strict standard." *United States v. Tanguay*, 787 F.3d 44, 49 (1st Cir. 2015). Special Agent Ainsworth attested that he included only the December 28, 2017, "last observation" date in the warrant affidavit because he misunderstood the data generated by the law enforcement database and believed that both suspect files had been associated with O'Neal's IP address on that date. *See* ECF No. 127-1 ¶ 5. He also attested that he did not mention the second video file in his affidavit because he had no firsthand knowledge of its contents. *Id.* ¶¶ 10, 12. Thus the omission was the result of negligence and was not intentional or reckless. *See United States v. Melvin*, 596 F.2d 492, 500 (1st Cir. 1979) (upholding district

5

court's conclusion that omission of witness's recantation from search warrant affidavit was negligent, not reckless, because of affiant's good faith belief that the recantation was not credible).

Further, even if the omission was intentional or reckless, O'Neal has not made the second showing required for a *Franks* hearing: that the omission was "necessary to the finding of probable cause." *McLellan*, 792 F.3d at 208. An affidavit provides a basis for a finding of probable cause when it "demonstrates in some trustworthy fashion the likelihood that an offense has been committed and that there is sound reason to believe that a particular search will turn up evidence of it." *Id.* at 208-09. O'Neal argues that the false impression that the "12yo video" was associated with his IP address on December 28, 2017, is necessary to the finding of probable cause because the affidavit is insufficient if all of the information about the "12yo video," including the still image attached as an exhibit, is removed. The applicable test, however, requires a different analysis. A court "must determine whether the totality of the revealed circumstances makes out a showing of probable cause, even with false facts stripped away, inaccurate facts corrected, and omitted facts included." *United States v. Barbosa*, 896 F.3d 60, 69 (1st Cir.), *cert. denied*, 139 S. Ct. 579 (2018).

Here, after correcting for Special Agent Ainsworth's inaccuracy, the totality of the circumstances reflects that O'Neal's IP address was identified by a law enforcement database for exchanging the "12yo video" on a peer-to-peer file sharing network on October 3, 2017, and that his IP address was then identified a second time by the same database for exchanging a suspected video depicting a one-year-old child defecating on December 28, 2017. Rather than vitiating probable cause, adding

the omitted information to the search warrant affidavit bolsters the likelihood that an offense had been committed and that a search of O'Neal's home would reveal evidence of child pornography because the corrected facts show a pattern of accessing child pornography.[2]

## III.  CONCLUSION

For the foregoing reasons, it is **ORDERED** that O'Neal's Motion for Leave to File *Franks* Hearing Motion (ECF No. 125) is **DENIED**.

**SO ORDERED.**

**Dated this 30th day of July, 2019.**

                                                   /s/ JON D. LEVY
                                       **CHIEF U.S. DISTRICT JUDGE**

---

[2] O'Neal also argues in passing that the video associated with his IP address on December 28, 2017, is "of questionable sexually explicit value." ECF No. 125 at 2. But even if the search warrant affidavit stated only that the "12yo video" had been identified as being exchanged from O'Neal's IP address on October 3, 2017, that information alone would still support a finding of probable cause. *See McLellan*, 792 F.3d at 211 (finding that "two-plus-month delay" in applying for warrant did not render information in the warrant affidavit stale and thus did not negate probable cause finding); *see also United States v. Morales-Aldahondo*, 524 F.3d 115, 119 (1st Cir. 2008) (finding that "the passage of more than three years from the acquisition of the evidence until the warrant application" did not render evidence of child pornography possession stale because "customers of child pornography sites do not quickly dispose of their cache.").